IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT Charleston

UNITED STATES OF AMERICA,

>Plaintiff,

v.                                                          Civil Action No.: 2:26-CR-00013

PABLO DOMINGUEZ,
  also knows as "Pablo Dominguez Domineguez"
        Defendant.

## PABLO DOMINGUEZ'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENT AND DISMISS INDICTMENT

Comes Now the Defendant Pablo Dominguez, hereinafter "Dominguez" by and through his counsel, Michelle Roman Fox, and respectfully moves this Honorable Court to suppress his custodial statement obtained while he was  in ICE detention and to dismiss the Indictment based upon this illegally obtained statement.

## STATEMENT OF FACTS

This case arises from an ICE raid on January 16, 2026, at the Rio Grande Mexican restaurant in Nitro, West Virginia.  Numerous armed and masked agents wearing military-style gear stormed the restaurant and a nearby residence.

Dominguez and eight other individuals, who were working at the restaurant were seized without a warrant during the raid.  After his arrest by ICE agents, Dominquez was not taken promptly before a judge, but instead held in DHS facility in Poca, West Virginia. There, he and others were subjected to poor custodial conditions of confinement, including cold holding cells without even a mattress. While confined in these conditions, agents coerced alleged confessions

from each worker including Domenguiz. Dominquez's alleged confession formed the basis for the Indictment against him in this case.

Despite Dominguez being arrested and detained on January 16, 2026, no arrest warrant was issued for him until February 3, 2026. Thus, an initial appearance was not held until approximately two and a half weeks following Dominguez's apprehension. The Government failed entirely to follow the strict mandates of the *Federal Rules of Criminal Procedure* which require that "the person arrested must be taken *without unreasonable delay* before a magistrate Judge." If arrested without a warrant, a probable cause complaint must be promptly filed, and an initial appearance must be promptly set. These protections were entirely ignored and instead Dominguez was subjected to harsh detention conditions without even being given the basic due process right of an appearance before a Judge until **19 days** after his arrest and seizure.

This prosecution is the direct product of a seizure and detention method this Court has already determined violates the Constitution. In *Urquilla-Ramos v. Trump*, No. 2:26-cv-66, 2026 WL 475069 (S.D.W. Va. Feb. 19, 2026), this Court held that masked, anonymous federal agents operating without warrants and without visible accountability violated the Fourth Amendment and the Due Process Clause when they seized and detained an immigrant in this district.

Dominguez was seized without a warrant then held in harsh conditions without a timely appearance before a Judge, and then coerced into a confession, which ultimately formed the basis of the Indictment against him. For the reasons stated below, the Defendant's confession must be suppressed, and the fruits of this confession- the Indictment- dismissed, with prejudice.

## I.      THE SEIZURE VIOLATED THE FOURTH AMENDMENT

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons … against unreasonable searches and seizures." *U.S. Const. Amend. IV.* The Supreme Court has

repeatedly held that the "ultimate touchstone of the Fourth Amendment is 'reasonableness.'"
*Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Immigration enforcement is not exempt from
the Fourth Amendment. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975); *INS v. Delgado*, 466 U.S. 210, 216 (1984). Even civil seizures must be reasonable.

In *Urquilla-Ramos*, this Court held that masked, anonymous agents conducting
warrantless civil immigration seizures offend the Fourth Amendment's guarantee of security and
accountability. 2026 WL 475069, at *4. This Court emphasized that constitutional authority must
be traceable, identifiable, and subject to review at the moment it is exercised. *Id.* at *7.

Defendant Dominguez was seized with the same enforcement action that this Court
condemned in *Urquilla-Ramos*. No criminal arrest warrant existed for Dominguez. No judicial
officer found probable cause of a criminal offense for the arrest of Dominguez. Yet, Dominguez
was taken purportedly pursuant to a civil immigration authority by heavily armed masked agents
operating without visible accountability.

This investigation began in December of 2025 as a civil/administrative I-9 audit of the
Rio Grande restaurant. In response to the I-9 inspection notice, Rio Grande provided
documentation it had concerning its employees. Upon its review of the documentation, the
government concluded that some of the documents provided were fake and applied for search
warrants to search the Rio Grande restaurant and nearby residence. *See* **Exhibit 1** (Search
Warrant Affidavit). Importantly, Defendant Dominguez is not identified in the Search Warrant
Affidavit as among the individuals who the Government contend submitted fake I-551
employment documents. Indeed, Dominguez's name was not mentioned at all in the Search
Warrant affidavit.

3

The search warrant executed on January 16, 2026, attempted to authorize the seizure of human beings identified as ***"identified*** illegal aliens."   Again, Dominguez was not "identified in the search warrant.

Nevertheless, Dominguez was seized during the search warrant execution forcibly conducted by armed and masked agents,  although his name was NOT identified in the affidavit. He and others, who were identified in the Affidavit, were then transferred to a facility in Poca, West Virginia.  According to a deposition taken on February 10, 2026, of one of the seized workers, Manuel Marvin Tzoc Tzep, the workers were subjected to poor conditions of confinement following their seizure:

> Q.  And what happened after you were arrested?
>
> A.  I was brought here to the jail.  They left us there all night.  They didn't even give us any covers, not even a mattress.  We were --- we went through cold. My bones were hurting me from laying there on the floor and there where people sat.  It was very cold.  They gave us no blankets, no mattress.  We just went through a night of cold.  Like at 7:00 in the morning, we were moved to the gym. … And then our clothing was changed and we were brought here.  Then they gave us breakfast.  Then, like, at 7:00 or 8:00, we were given like a cover.  Then all of  the night, it was the same way, just a cover and nothing else.  You can't get warm.  Then on the third day, they brought a mattress to us.  And on the third day was when we were actually put into a cell.  I'm not favoring anyone and I'm not defending anyone.  I'm just telling you the truth.  If you want the truth, I'm telling you the truth.

Exhibit 2 (Feb. 10 deposition of Manuel Marvin Tzoc Tzep).

While confined in these deplorable conditions, federal agents conducted custodial interviews of the seized workers, including Dominguez. (See, **brief** summary of interview of Dominguez, attached as Exhibit 3.)  It is unclear from the discovery produced as to why Dominguez was even arrested as he was not identified by virtue of the I-9 investigation.  He may have been detained solely because his is of Hispanic heritage, but this is unclear.   Nevertheless, Mr. Dominguez, who cannot speak or read English, was interviewed by ICE agents with a

Spanish interpreter, who ironically was an employee of DHS.   Even though the language spoken by the interrogating officers was different than that spoken by Mr. Dominguez, and thus, reliance on the DHS interpreter was critical, his interview was neither recorded by video or audio, which as this Court knows, is a common practice when anyone is arrested and questioned in this District.   In this particular case, a recording is even more crucial, so that the questioning and particularly the Defendant's understanding and answers could be evaluated independently or through Defendant's own retained interpreter.  According to the investigative report Mr. Dominguez as well as everyone else who was interviewed confessed to being in the country illegally and/or obtaining false documents from various individuals.

Four days after Dominguez's alleged confession, the government charged Dominguez with offenses related to false documents on January 20, 2026.   However, no arrest warrant was issued at this time, but Dominguez remained in custody.

An arrest warrant was issued for Dominguez on February 3, 2026, eighteen days after he was taken by masked federal agents. On that date, the government indicted Dominguez with a felony for falsifying documents in violation of 18 U.S.C. § 1546(a). Although the grand jury transcript has not been produced, the government likely relied heavily upon Dominguez's alleged confession to secure the Indictment.   Dominguez **first** appeared before the Court for his initial appearance and arraignment on February 4, 2026, **19 days** after his seizure from his workplace.

The Fourth Amendment draws a clear structural distinction between a warrant to search for property and a warrant to arrest a person. *See Payton v. New York*, 445 U.S. 573, 602–03 (1980); *Steagald v. United States*, 451 U.S. 204, 212–16 (1981). While officers executing a search warrant may briefly detain occupants during the search for officer safety and orderly completion of the warrant, that authority is strictly limited in scope and duration. *See Michigan v.*

*Summers*, 452 U.S. 692, 705 (1981); *Bailey v. United States*, 568 U.S. 186, 201 (2013). Transporting individuals from the scene of a search to a detention facility for interrogation exceeds the limited authority recognized in *Summers* and constitutes an arrest requiring probable cause. *See Dunaway v. New York*, 442 U.S. 200, 212–16 (1979).

Here, on January 16, 2026, Dominquez and the other workers were seized, transported, and held in ICE custody despite the absence of criminal arrest warrants and before any criminal probable cause had been presented to a judicial officer. Indeed, Dominquez's seizure is even more problematic as the search warrant affidavit does not identify him.   The Government's reliance on a document-search warrant to effectuate what functioned as full custodial arrests exceeds the constitutional scope of the warrant and renders the ensuing detention—and all statements derived from it-unlawful.

Defendant Dominguez remained in uninterrupted custody from seizure through interrogation. The statements obtained are the fruits of the unconstitutional seizure and detention. Under *Wong Sun v. United States*, 371 U.S. 471, 484–88 (1963), evidence obtained as a direct result of an unconstitutional seizure must be suppressed.

## II.   DOMENIGUEZ'S CUSTODIAL INTERROGATION VIOLATED HIS FIFTH AMENDMENT PROTECTIONS AND MUST BE SUPPRESSED

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." *U.S. Const. Amend. V.* When the Government subjects an individual to custodial interrogation, it must first strictly follow the procedural safeguards announced in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). *See Dickerson v. United States*, 530 U.S. 428 (2000). Even where warnings are administered, the Government bears the burden of proving that any waiver of rights was knowing, intelligent, and voluntary. *See Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).  If the

Government fails to prove that the confession was knowingly, intelligently and voluntarily given, the confession must be suppressed.  See, *United States v. Holmes*, 670 F.3d 586, 591 (citing *United States v. Guay*, 108 F.3d 545, 549 (4th Cir. 1997).

Here, the reports state in conclusory fashion that Dominguez, and incidentally, every other defendant, was "Mirandized" and agreed to speak.  Significantly, there is no signed waiver form, either in English or Spanish, produced in discovery establishing Mr. Dominguez was advised of his *Miranda* rights and knowingly and intelligently waived those rights.   More problematic for the Government is there is absolutely no audio or video recording of the advisement or the interview. There is no contemporaneous documentation showing precisely what warnings were given, how they were translated, or whether Defendant Dominguez affirmatively and unequivocally waived them. Instead, the only evidence of a waiver is a post hoc narrative prepared by the same agents who conducted the interrogation.

The interrogation was conducted through a Spanish-speaking DHS employee. There is no recording of the exchange, no certification of the interpreter's qualifications, and no verbatim account of the warnings provided. Where language barriers exist, courts must scrutinize purported waivers carefully to ensure comprehension rather than rote acquiescence. *See United States v. Garibay*, 143 F.3d 534, 538–40 (9th Cir. 1998) (invalidating waiver where language limitations undermined knowing relinquishment); *see also United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010) (Government bears burden to prove comprehension). The absence of any recording or written waiver makes that burden difficult, if not impossible, to carry.  Quite frankly, the Government has no evidence to satisfy its burden that Dominguez was provided with adequate Miranda warnings, understood his rights, and knowingly, intelligently and voluntarily waived those rights.  The Government had the unique opportunity to assure compliance with the

7

Constitution when they conducted an interview of Dominguez.  The Government could have easily recorded the interview and provided the *Miranda* waiver to him in Spanish to sign.   It, unexplainably, chose not to do so, and as a result cannot satisfy its burden.

Even apart from *Miranda*, the Due Process Clause requires that a confession be voluntary under the totality of the circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). A statement is involuntary if obtained by coercive police conduct that overbears the will of the accused. *See Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). The voluntariness inquiry considers the defendant's custodial status, physical conditions of detention, duration of confinement, access to counsel, and the presence of threats or implicit leverage. *See Withrow v. Williams*, 507 U.S. 680, 693 (1993).   The proper inquiry focuses on whether, as a matter of law, under a totality of the circumstances, the defendant's will has been overborne or his capacity for self-determination critically impaired."  *United States v. Pelton*, 835 F.2d 1067 (4th Cir. 1987).

The voluntariness inquiry is particularly sensitive where detention is civil in form but criminal in function.

The circumstances here are deeply troubling. Defendant Dominquez was held in ICE civil custody in a cold facility without a mattress and without prompt access to counsel or judicial presentment. He had been seized, without a warrant, during a highly militarized raid conducted by masked agents. He was isolated from his family and confronted with the immediate prospect of removal. Under such conditions, the psychological pressure inherent in detention is magnified. When interrogation follows immediately upon such confinement, voluntariness cannot be presumed.

The Supreme Court has long recognized that coercion need not take the form of overt threats or physical force. Subtle pressures arising from detention conditions can render a

confession involuntary. *See Spano v. New York*, 360 U.S. 315, 323 (1959). The question is whether the defendant's will was overborne. *See Culombe v. Connecticut*, 367 U.S. 568, 602 (1961) and *Pelton, Id.*

The Government chose to interrogate Dominguez while he was confined under harsh civil detention conditions and before any prompt judicial review. It chose not to record the advisement of rights, his waiver or the interview. It chose to rely on translation without preserving a record of what was said and how it was explained. Did the Government appropriately advise Dominguez that he was subject of a criminal investigation; that his statements to law enforcement could be used to bring criminal charges against him; that he had the right to refuse to answer any question posed to him? We will never know the objective answers to these critical questions because the Government chose not to record the interrogation. The Government cannot meet its burden of proving a knowing, intelligent, and voluntary waiver by Dominguez of his Miranda rights. Nor can it establish that his statements were the product of free and unconstrained choice.

Accordingly, Dominguez's custodial statements must be suppressed under the Fifth Amendment.

## III. THE GOVERNMENT VIOLATED RULE 5 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE BY FAILING TO PROMPTLY PRESENT DOMINGUEZ FOR A JUDICIAL HEARING

*Federal Rule of Criminal Procedure* 5(a)(1) requires that a person arrested for a federal offense be brought "without unnecessary delay" before a magistrate judge. The Supreme Court has enforced this requirement for nearly a century. *See McNabb v. United States*, 318 U.S. 332, 344 (1943); *Mallory v. United States*, 354 U.S. 449, 453 (1957); *see also Corley v. United States*, 556 U.S. 303, 309 (2009). Once the Government has formed the intent to pursue criminal

prosecution, it may not use civil detention as a device to delay presentment. *See Corley*, 556 U.S. at 309. Likewise, civil detention cannot be used to evade prompt presentment once criminal charges are contemplated. *See United States v. Alvarez-Sanchez*, 511 U.S. 350, 357-59 (1994).

Dominguez was seized by federal agents, without a warrant, on January 16, 2026. A criminal complaint was filed on January 20, 2026. Yet Defendant remained in ICE custody without prompt presentment in front of a Judge until February 4, 2026. The Government cannot file a criminal complaint, force confessions, use the confessions to bring more changes, and then warehouse a defendant in civil detention to avoid judicial oversight.

## IV.    THE GOVERNMENT'S CONDUCT VIOLATES FUNDAMENTAL DUE PROCESS

Beyond the Fourth and Fifth Amendment violations addressed above, the Government's conduct independently violates the Due Process Clause. The Supreme Court has recognized that there are circumstances in which law enforcement conduct is so egregious that it "shocks the conscience" and violates fundamental fairness. *See Rochin v. California*, 342 U.S. 165, 172 (1952); *Hampton v. United States*, 425 U.S. 484 (1976) (Powell, J., concurring).

In *United States v. Russell*, 411 U.S. 423, 431–32 (1973), the Court acknowledged that outrageous governmental conduct can bar prosecution where law enforcement's actions offend fundamental fairness, shocking to the universal sense of justice. The Fourth Circuit has recognized this doctrine. *See United States v. Osborne*, 935 F.2d 32, 36 (4th Cir. 1991).

This case presents precisely the type of structural abuse that implicates due process. Masked heavily armed federal agents executed a raid on a Mexican restaurant. Workers were detained without criminal arrest warrants. Dominguez was one worker detained even though his name is not identified in the search warrant affidavit. While held in civil custody, Dominguez and the others were interrogated for criminal prosecution. Their statements were used to file

criminal complaints and indictments. Arrest warrants did not issue until weeks later. Initial appearances were delayed.

Civil detention was used as a staging ground for criminal confessions. The Government cannot leverage immigration custody as a constitutional no-man's land in which criminal protections are suspended. To allow that tactic would create a dual-track system in which constitutional safeguards apply to some, but not others. The Due Process Clause forbids this.

When executive power is exercised in a manner that collapses the boundary between civil detention and criminal prosecution, strips away judicial oversight, and extracts confessions before the Constitution can intervene, the integrity of the judicial process itself is implicated.

Under *Rochin* and *Russell*, dismissal is warranted.

## V.    THE INDICTMENT RESTS ON TAINTED EVIDENCE

The criminal complaint relies explicitly on Defendant's alleged custodial statement. There is substantial reason to believe that the same statement was presented to the grand jury. While an indictment is not automatically invalidated by the introduction of illegally obtained evidence, courts retain supervisory authority to protect the integrity of the judicial process where constitutional violations infect the prosecution. *See United States v. Blue*, 384 U.S. 251, 255 (1966); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).

If the confession is suppressed, the Government must demonstrate independent, untainted probable cause. Absent such proof, dismissal is required. The Court possesses supervisory authority to dismiss an indictment where governmental misconduct threatens the integrity of the judicial process.

## VI.    CONCLUSION AND REQUESTED RELIEF

For the foregoing reasons, Defendant Pablo Dominguez respectfully requests that this

Court:

1.      Suppress all custodial statements obtained during Defendant Dominguez's

detention.

2.      Suppress all derivative evidence obtained from the fruits of the illegal confession.

3.      Dismiss the indictment, as it rests upon tainted evidence obtained in violation of

the Constitution.

4.      Order Defendant Dominguez's immediate release from custody upon dismissal,

with prejudice of the Indictment.

                                        Respectfully submitted,


                                        Pablo Dominguez

                                            BY COUNSEL

                                        /s/ Michelle Roman Fox
                                        Michelle Roman Fox
                                        W.Va. Bar No. 5753
                                        3359 Teays Valley Road
                                        Hurricane, West Virginia 25526
                                        (304) 552-2579 (telephone)
                                        michellefox@smithlawpllc.net
                                        mrfoxlaw@suddenlink.net

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

AT Charleston

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                       Civil Action No.: 2:26-CR-00013

PABLO DOMINGUEZ,
  also knows as "Pablo Dominguez Domineguez"
      Defendant.


CERTIFICATE OF SERVICE

      I, Michelle Roman Fox, counsel for the Defendant, Pablo Dominguez certify on this 24th day of  February 2026,  I served by CM/ECF filing the following **PABLO DOMINGUEZ'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENT AND DISMISS INDICTMENT** upon counsel for the United States of America.

Jonathon Storage, Esq.
Assistant United States Attorney
300 Virginia Street East
Room 4000
Charleston, West Virginia 25301



Pablo Dominguez

BY COUNSEL

/s/ Michelle Roman Fox
Michelle Roman Fox
W.Va. Bar No. 5753
3359 Teays Valley Road
Hurricane, West Virginia 25526
(304) 552-2579 (telephone)
michellefox@smithlawpllc.net
mrfoxlaw@suddenlink.net

13