UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                          CRIMINAL NO. 2:26-cr-00013

PABLO DOMINGUEZ
   also known as "Pablo Dominguez-Dominguez"

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT PABLO
DOMINGUEZ'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO
SUPPRESS STATEMENT AND DISMISS INDICTMENT

Comes now the United States of America, by Jonathan T. Storage, Assistant United States Attorney for the Southern District of West Virginia, and respectfully submits its response in opposition to the defendant's Motion to Suppress Statements and to Dismiss the Indictment (ECF No. 22). For the reasons stated herein, the defendant's motion should be denied.

I.  BACKGROUND

Following an I-9 audit, Homeland Security Investigations ("HSI") learned that numerous employees working at Rio Grande Mexican Restaurant in Nitro, West Virginia, were using counterfeit identity documents to obtain employment. The I-9 audit specifically identified defendant Pablo Dominguez as an employee using counterfeit documents. The I-9 records also indicated that nearly all of the employees who had used counterfeit documents

lived at the same residence in Nitro. Defendant Pablo Dominguez, however, did not share a residence with the other employees.

HSI sought and obtained federal search warrants for both the restaurant and the residence. In his affidavit for the search warrants, the HSI Special Agent specifically noted defendant Pablo Dominguez's Form I-9, which stated that neither the Green Card Number nor the Social Security Number used by defendant Pablo Dominguez were assigned to him by the United States Government.[1] At the time the warrants were obtained, HSI agents were not sure that "Pablo Dominguez" was his true name.[2]

On January 16, 2026, the search warrants were executed, and the execution was completed by mid-afternoon.

Several restaurant employees were criminally arrested, including defendant Pablo Dominguez. HSI agents contacted the U.S. Attorney's Office ("USAO") that afternoon so that criminal complaints could be prepared and submitted to a federal magistrate judge.

Before he was transported to South Central Regional Jail, the defendant was interviewed by HSI agents. An ICE officer who speaks

---

[1] Other employees were likewise separately discussed in the search warrant affidavits.

[2] Indeed, several of the I-9 documents received from the restaurant listed false names that corresponded with counterfeit identity documents.

2

Spanish fluently advised the defendant of his <u>Miranda</u> rights and translated the communications among the agents and the defendant. The defendant agreed to speak with agents after being informed of his <u>Miranda</u> rights. The entire interview lasted between three and five minutes.

Following the brief interview, the defendant was transported to the regional jail, and federal agents had no further contact with him.

By the time the criminal complaint was prepared and approved by USAO management and the HSI agent, the business day had concluded. January 16, 2026, was the Friday of the Martin Luther King, Jr., holiday weekend, and the Court was closed on Monday, January 19, 2026. On Tuesday, January 20, 2026, the very next business day after the search warrant execution, a criminal complaint was sworn out and filed with the Court. An arrest warrant was issued the same day.

Because defendant Pablo Dominguez was already in custody at the regional jail, the United States Marshals Service executed the arrest warrant by informing the jail of the warrant.

Importantly, the Court, through U.S. Magistrate Judge Tinsley's Chambers, was informed of the arrests. Following the Court's directive, the government did not transport the defendant

to the courthouse, as no Spanish language court interpreter was available.

On January 21, 2026, the government filed a Motion for Detention Hearing with respect to the defendant.

On January 22, 2026, the Court set a combined initial hearing, preliminary hearing, and detention hearing for February 4, 2026.

On February 3, 2026, a federal Grand Jury returned a single-count indictment against the defendant. On February 4, 2026, the defendant was brought to Court as scheduled.

The government made no attempt to contact or question the defendant after his brief January 16th post-arrest interview.

The defendant now (1) challenges his arrest; (2) seeks to suppress his post-Miranda warning statements; and (3) seeks dismissal, in part, based on prompt presentation issues.

For the reasons stated herein, the defendant's motion (ECF No. 22) should be denied in its entirety.

## II.   LEGAL STANDARD

### A.   Search Warrants

"Generally, the Government must obtain a search warrant supported by probable cause before conducting a search of a residence." United States v. Dugan, 136 F.4th 162, 171 (4th Cir. 2025). "[I]n assessing a probable cause determination by a magistrate judge, [the Fourth Circuit applies] 'a deferential and

4

pragmatic standard to determine whether the judge 'had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" Id. at 169. "In making this determination, [the Fourth Circuit] consider[s] 'only the facts presented in the warrant application.'" Id. at 169. "Probable cause is not a high bar and does not require certainty; it merely requires 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. at 171.

"[A] warrant is not intended to impose a 'constitutional strait jacket' on investigating officers. Courts must refrain from interpreting warrant terms in a 'hypertechnical' manner, and should instead employ a 'commonsense and realistic' approach." United States v. Dargan, 738 F.3d 643, 647 (4th Cir. 2013) (internal citation omitted). "A warrant cabins executive discretion, gives the imprimatur of lawful authority to potentially intrusive police conduct, and helps to ensure that valuable evidence is not later excluded as a result of an illicit search." Id. at 647.

"Officers are motivated to secure judicial approval in part because of the safe harbor it represents. The sense of confidence a warrant affords, however, is diminished to the extent that its terms are subject to an excessively narrow interpretation." Dargan, 738 F.3d at 648.

The exclusionary rule "'applies only where it results in appreciable deterrence' and where 'the benefits of deterrence outweigh the costs.'" Sanchez v. Sessions, 885 F.3d 782, 787 (4th Cir. 2018) (quoting Herring v. United States, 555 U.S. 135, 141 (2009)).

"[T]he Supreme Court has cautioned that the exclusionary rule's 'massive remedy,' - the suppression of evidence - is 'our last resort, not our first impulse." Yanez-Marquez v. Lynch, 789 F.3d 434, 446 (4th Cir. 2015) (quoting Hudson v. Michigan, 547 U.S. 586, 595 (2006)).

"[P]olice may seize evidence in plain view during a lawful search if (1) the seizing officer is lawfully present at the place from which the evidence can be plainly viewed; (2) the seizing officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." United States v. Williams, 592 F.3d 511, 521 (4th Cir. 2010) (quoting United States v. Legg, 18 F.3d 240, 242 (4th Cir.1994)) (cleaned up).

**B.    Miranda Warnings and Voluntary Statements**

"In order for Miranda warnings to be necessary, the defendant must be in a custodial situation, and the statements must be made while the defendant is being interrogated." United States v. Wright, 991 F.2d 1182, 1186 (4th Cir. 1993).

6

"[B]efore a suspect in custody can be interrogated, the suspect 'must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' In general, any statements elicited from a suspect in violation of these rules are inadmissible in the government's case-in-chief." United States v. Haynes, 26 F. App'x 123, 132 (4th Cir. 2001) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)).

"The admissibility of a defendant's statement also turns on whether the statement was voluntary under the Due Process Clause of the Fifth Amendment." Id. at 132 (citing United States v. Braxton, 112 F.3d 777, 780 (4th Cir. 1997) (en banc)).

"A statement is involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause." Braxton, 112 F.3d at 780.

"The test for determining whether a statement is voluntary under the Due Process Clause is whether the confession was extracted by any sort of threats or violence, or obtained by any direct or implied promises, however slight, by the exertion of any improper influence." Braxton, 112 F.3d at 780 (cleaned up).

The Supreme Court has held that "coercive police activity is a necessary predicate to the finding that a confession is not

'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986).

"While each confession case [decided by the Supreme Court] has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct. Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 163–64.

"The proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired." Braxton, 112 F.3d at 780 (quotation marks omitted).

"To determine whether a defendant's will has been overborne or his capacity for self-determination critically impaired, courts must consider the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." Braxton, 112 F.3d at 781 (quotation marks omitted).

"Truthful statements about [a defendant's] predicament are not the type of 'coercion' that threatens to render a statement involuntary. As the Supreme Court has observed, no statements would qualify as voluntary under such a standard, for 'very few people

8

give incriminating statements in the absence of official action of some kind.'" United States v. Pelton, 835 F.2d 1067, 1073 (4th Cir. 1987) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 224 (1973)).

"The Due Process Clause does not mandate that the police forgo all questioning, or that they be given carte blanche to extract what they can from a suspect. 'The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.'" Schneckloth, 412 U.S. at 225-26 (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)).

"Any statement given freely and voluntarily without any compelling influences is admissible in evidence." Braxton, 112 F.3d at 781.

"The Government bears the burden of proving by a preponderance of the evidence that the statement was voluntary." Braxton, 112 F.3d at 781.

### C.    Prompt Presentment

"The common law obliged an arresting officer to bring his prisoner before a magistrate as soon as he reasonably could. This 'presentment' requirement tended to prevent secret detention and served to inform a suspect of the charges against him, and it was the law in nearly every American State and the National Government." Corley v. United States, 556 U.S. 303, 306 (2009) (citations omitted).

The Federal Rules of Criminal Procedure have codified the common law in the federal court system. Fed. R. Crim. P. 5(a)(1)(A) ("A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer as Rule 5(c) provides, unless a statute provides otherwise.").

"Today presentment is the point at which the judge is required to take several key steps to foreclose Government overreaching: informing the defendant of the charges against him, his right to remain silent, his right to counsel, the availability of bail, and any right to a preliminary hearing; giving the defendant a chance to consult with counsel; and deciding between detention or release." Corley, 556 U.S. at 320.

"Under the rule as revised by [18 U.S.C.] § 3501(c), a district court with a suppression claim must find whether the

10

defendant confessed within six hours of arrest (unless a longer delay was reasonable considering the means of transportation and the distance to be traveled to the nearest available magistrate judge). If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was made voluntarily and the weight to be given it is left to the jury. If the confession occurred before presentment and beyond six hours, however, the court must decide whether delaying that long was unreasonable or unnecessary under the McNabb–Mallory cases, and if it was, the confession is to be suppressed." Corley, 556 U.S. at 322 (cleaned up) (citations and quotation marks removed); see also 1 Fed. Prac. & Proc. Crim. § 74 (5th ed.) ("[A]s long as the police obtain an otherwise voluntary confession within six hours of the arrest, any subsequent delay in bringing the accused before a magistrate judge is not grounds for suppressing the confession, even if that delay was unnecessary. For purposes of this six-hour 'safe harbor' provision, it is the time between the arrest and confession that is relevant, not the time between the arrest and the court appearance.").

"[T]he history of the prompt-presentment requirement codified in Rule 5(a) confirms 'the remedy for such a violation is the exclusion of evidence, not dismissal of a criminal case.'" United States v. Oliver, No. 23-4739, 2025 WL 1984019, at *1 (4th Cir.

11

July 17, 2025) (unpublished per curium opinion); see also United States v. Peeples, 962 F.3d 677, 686 (2d Cir. 2020) ("Although the history of the prompt-presentment requirement codified in Rule 5(a) reflects an evolving understanding of what constitutes a violation of that requirement, that same history confirms that the remedy for such a violation is the exclusion of evidence, not dismissal of a criminal case. And, as some of our sister Circuits have held, 'the appropriate remedy for a violation of Rule 5(a)(1)(A) is not dismissal of an indictment, but suppression of evidence illegally obtained as a result of the violation.'"); see also United States v. Cooke, 853 F.3d 464, 471 (8th Cir. 2017) ("The purpose of that rule is to 'frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual.' Accordingly, the appropriate remedy for a violation of Rule 5(a)(1)(A) is not dismissal of an indictment, but suppression of evidence illegally obtained as a result of the violation." (citation omitted)).

"Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, [a criminal defendant] would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. . . . Our numerous precedents ordering the exclusion of

such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether." United States v. Blue, 384 U.S. 251, 255 (1966).

## III.   DISCUSSION

The defendant's motion should be denied because (A) the government had a valid federal search warrant for both the restaurant and the residence, (B) the execution of the search warrants did not violate the defendant's rights, (C) the defendant's post-arrest interview complied with Miranda and its progeny, and (D) the government promptly notified the Court of the defendant's arrest.

### A.   The government obtained two search warrants, both supported with information establishing probable cause.

The law enforcement activity that occurred on January 16, 2026, at the Rio Grande Mexican Restaurant and a nearby residence in Nitro, West Virginia, was criminal in nature, not civil/administrative. Federal agents were aimed at searching for and seizing evidence of crimes and individuals engaged in committing crimes, a fact the defendant glosses over.

The affidavit in support of the restaurant and residence search warrant specifically refers individual names listed in the Form I-9 paperwork that did not have properly corresponding

13

authentic identity documents. <u>See</u> Exhibit A (search warrant affidavit for the restaurant) at ¶¶ 23-30.

The affidavits stated that, based on the information presented, there was probable cause to believe that evidence of crime and individuals to be seized were present at the restaurant and/or residence. United States Magistrate Judge Tinsley agreed that probable cause existed. When the warrants were executed, defendant Pablo Dominiguez was found and seized, an act contemplated in the supporting documents and the warrant itself.

The U.S. Magistrate found probable existed to believe that evidence of crimes, as wells as individuals committing the identified crimes, were present at the restaurant and residence. Officers found and seized defendant Pablo Dominguez's I-9 paperwork during the operation, paperwork that was not produced in the I-9 audit process because the defendant was hired after the fact. The defendant was found working at the restaurant during the operation, and he was likewise seized. Again, this action was specifically permitted by the search warrant.

Accordingly, the government correctly followed established procedures to obtain two federal search warrants to enter the restaurant and the residence, federal officers were within legal bounds when they executed the warrants at the two locations, and the enforcement action was criminal in nature.

14

**B.    The execution of the search warrants did not violate the defendant's rights.**

The defendant attempts to conflate very different circumstances and sets of facts in an effort to dismiss the Indictment against him. The defendant's case is dramatically different from the civil habeas cases he cites. In Urquilla-Ramos v. Trump, the Court expressed its alarm about federal agents, "acting without warrants of any kind—are seizing persons for civil immigration violations and imprisoning them without any semblance of due process." Urquilla-Ramos v. Trump, No. 2:26-CV-00066, 2026 WL 475069, at *1 (S.D.W. Va. Feb. 19, 2026). The Court further said, "The systematic character of this practice and its deliberate elimination of every structural feature that distinguishes constitutional authority from raw force place it beyond the reach of ordinary legal description. It is an assault on the constitutional order." Id. at *1. Unlike in Urquilla-Ramos, the government obtained lawful process to search for and seize the defendant.

"Generally, the Government must obtain a search warrant supported by probable cause before conducting a search of a residence." Dugan, 136 F.4th at 171. "[I]n assessing a probable cause determination by a magistrate judge, [the Fourth Circuit applies] 'a deferential and pragmatic standard to determine

15

whether the judge 'had a substantial basis for concluding that a search would uncover evidence of wrongdoing.'" Id. at 169.

Instead of the use of "raw force" that "places it beyond the reach of ordinary legal description," Urquilla-Ramos, 2026 WL 475069, at *1, "[a] warrant cabins executive discretion, gives the imprimatur of lawful authority to potentially intrusive police conduct, and helps to ensure that valuable evidence is not later excluded as a result of an illicit search." Dargan, 738 F.3d at 647. "Officers are motivated to secure judicial approval in part because of the safe harbor it represents." Id. at 648. In short, federal agents in this case obtained judicially authorized search warrants, which conformed to established constitutional and due process standards.

Additionally, the use of weapons and masks in executing the warrants in this case is markedly different from the cited habeas cases. The defendant states, "Numerous armed and masked agents wearing military-style gear stormed the restaurant and a nearby residence." ECF No. 22 at 1. But the defendant fails to explain how the execution of the search warrant, where firearms and tactical gear are used by federal agents, is different from any other warrant execution operation. Certainly, officers do not know exactly what they will encounter when they enter an unsecured property to effectuate a warrant. The use of weapons and tactical

16

gear for officer safety is so well established that any legal citation should be generally unnecessary. Nevertheless, the Fourth Circuit has held, "Investigating officers may take such steps as are reasonably necessary to maintain the status quo and to protect their safety." United States v. Taylor, 857 F.2d 210, 213 (4th Cir. 1988). Although "approaching a suspect with drawn weapons are extraordinary measures, such police procedures have been justified in this circuit as a reasonable means of neutralizing potential danger to police and innocent bystanders." Id. at 214.

No anomaly exists in this case. Federal agents used reasonable force to execute the warrants to maintain their safety and the safety of bystanders.[3] To the extent the defendant is concerned about the use of masks by some officers, the "anonymity" of the officers is not an issue here, unlike in the habeas cases. The government has provided extensive discovery in this case, to include officer reports and body camera footage.

The execution of the search warrants did not violate the defendant's constitutional rights, and his motion on this point should be denied.

---

[3] Notably, when HSI agents began their execution of the search warrant at the restaurant, two HSI agents approached the restaurant's management, without having their weapons drawn, and calmly informed them of the search warrant. HSI agents allowed the restaurant to be cleared of patrons before any search took place.

**C.    The defendant's post-arrest interview complied with <u>Miranda</u>, and his statements were voluntarily.**

Importantly here, the defendant does not allege that he <u>wasn't given</u> his Miranda warnings. Rather, he points out that the interview did not involve him signing a document or having the interview audio or video recorded.

The government bears the burden of proving by a preponderance of the evidence that <u>Miranda</u> warnings were given and that the statements were voluntary. <u>Braxton</u>, 112 F.3d at 781. In his motion, the defendant states, "The absence of any recording or written waiver makes that burden difficult, if not impossible, to carry." ECF No. 22 at 7. But this is not so.

The defendant fails to recognize that the government can meet its burden through witness testimony, to include testimony from the interviewing agents and the agent-interpreter, all of whom are prepared to testify that proper <u>Miranda</u> warnings were given and that the defendant's statements were voluntary.

The government draws the Court's attention to the deposition transcript of Manuel Marvin Tzoc-Tzep, a material witness in the related case of <u>United States v. Miguel Angel Aguirre, et al.</u>, Case No. 2:26-cr-00010.[4] During cross-examination of the witness,

---

[4] Defendant Pablo Dominguez quotes the deposition transcript in his motion. ECF No. 22 at 4.

Andrew Tessman, counsel for Miguel Angel Aguirre, asked about the witness's interview with federal agents. Exhibit B (deposition transcript) at 68-69. The witness said, "And there's another lady. She's the one that would talk Spanish and she would, she would translate for [the HSI special agent]." Id. at 68. When questioned about whether the federal agents asked him to waive his right, the witness, seeming confused, said, "No." But he immediately and without prompting added, "They told me I had the right to an attorney and to remain quiet." Id. at 68-69.

The defendant does not mention these facts to the Court in his suppression motion. The material witness had no trouble understanding what the interpreter was telling him during the post-arrest interview, and he acknowledged that the agents advised him of his rights. The material witness was interviewed by the same three agents who interviewed the defendant, and the interviews occurred on the same day, at the same location, and within a matter of minutes of each other. The witness's deposition testimony corroborates that Miranda warnings were given to the defendant.

The defendant's statements were voluntary. He was interviewed while sitting in a chair at a table without handcuffs. The Supreme Court has held that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth

19

Amendment." Colorado v. Connelly, 479 U.S. 157, 167 (1986). "While each confession case [decided by the Supreme Court] has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct. Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Id. at 163–64.

"The proper inquiry is whether the defendant's will has been overborne or his capacity for self-determination critically impaired." Braxton, 112 F.3d at 780 (quotation marks omitted). "To determine whether a defendant's will has been overborne or his capacity for self-determination critically impaired, courts must consider the totality of the circumstances, including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." Id. at 781 (quotation marks omitted).

Here, the defendant was not threatened, beaten, starved, or psychologically tortured. Within 1 hour of his arrest, federal attempted to interview him with the aid of a Spanish-speaking agent. He was advised of his Miranda rights, and he agreed to speak with agents. The whole encounter lasted between 3 and 5 minutes.

20

"The Due Process Clause does not mandate that the police forgo all questioning, or that they be given carte blanche to extract what they can from a suspect. 'The ultimate test remains that which has been the only clearly established test in Anglo-American courts for two hundred years: the test of voluntariness. Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.'" Schneckloth, 412 U.S. at 225-26 (quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)).

The defendant's free will was not overborne or his capacity for self-determination critically impaired during the brief interview. He simply provided truthful information to agents. "Any statement given freely and voluntarily without any compelling influences is admissible in evidence." Braxton, 112 F.3d at 781.

The defendant was advised of his Miranda rights, and his subsequent statements were voluntarily given. Accoridngly, the defendant's motion on these points should be denied.

21

> **D.    The government did not violate prompt presentment rules because it promptly notified the Court of the defendant's arrest, and federal agents had no further contact with the defendant.**

Many of the defendant's factual statements regarding what happened after he was arrested are verifiably false.

The true order of things is this: (1) during the afternoon of January 16, 2026, the defendant was arrested following the execution of two federal search warrants; (2) following his arrest, federal agents immediately communicated with the U.S. Attorney's Office to secure a criminal complaint and arrest warrant;[5] within approximately 1 hour of his arrest, the defendant was advised of his <u>Miranda</u> rights, and agreed to participate in a brief interview that included English-to-Spanish translation; (3) because of the federal holiday on January 19, 2026, the criminal complaint[6] and warrant were filed and issued on Tuesday, January 20, 2026; (4) on January 20th, the government was in direct communication with U.S. Magistrate Judge Tinsley's Chambers regarding the custodial status of the defendant and the arrest warrants were forwarded to the regional jail by the U.S. Marshals Service; (5) on January 21, 2026, the government filed a motion for a detention hearing; (6)

---

[5] Multiple employees were arrested on January 16th, and criminal complaints and arrest warrants were immediately prepared for each of them.

[6] <u>See</u> Exhibit C (Criminal Complaint).

22

on January 22, 2026, the Court entered an Order scheduling the defendant's initial appearance, preliminary hearing, and detention hearing for February 4, 2026, because a court interpreter had to be arranged;[7] (7) on February 3, 2026, the Grand Jury returned the single-count Indictment against the defendant; and (8) the defendant appeared before the Court on February 4, 2026.

Following the Court's own directive, the government did not transport the defendant to the courthouse immediately following the issuance of the arrest warrant on January 20th because no interpreter was available. But the fact remains that the Court was fully aware of the defendant's arrest and custodial status, and it was the Court that scheduled his first appearance for February 4, 2026. The government cannot be accused of failing to promptly present him to the Court.

Importantly, even if a "prompt presentment" issue is established, the remedy is not dismissal of the Indictment. United States v. Oliver, No. 23-4739, 2025 WL 1984019, at *1 (4th Cir. July 17, 2025) (unpublished per curium opinion) ("[T]he history of the prompt-presentment requirement codified in Rule 5(a) confirms 'the remedy for such a violation is the exclusion of evidence, not dismissal of a criminal case.'").

---

[7] See Exhibit D (Order setting initial, preliminary, and detention hearings).

The purpose of "prompt presentment" is to prevent the government from secretly detaining a defendant to obtain a confession. Cooke, 853 F.3d at 471 ("The purpose of that rule is to 'frustrate law-enforcing officers from detaining the arrested person for an unnecessary period of time to enable the officer to extract a confession from the arrested individual.'").

The Supreme Court has determined that "a district court with a suppression claim must find whether the defendant confessed within six hours of arrest. . . . If the confession came within that period, it is admissible, subject to the other Rules of Evidence, so long as it was made voluntarily and the weight to be given it is left to the jury." Corley, 556 U.S. at 322 (cleaned up) (citations and quotation marks removed); see also 1 Fed. Prac. & Proc. Crim. § 74 (5th ed.) ("[A]s long as the police obtain an otherwise voluntary confession within six hours of the arrest, any subsequent delay in bringing the accused before a magistrate judge is not grounds for suppressing the confession, even if that delay was unnecessary. For purposes of this six-hour 'safe harbor' provision, it is the time between the arrest and confession that is relevant, not the time between the arrest and the court appearance.").

In the defendant's case, he was interviewed approximately 1 hour after his arrest. No government agents attempted any

24

subsequent interview of him between the time the interview ended and the time he had his initial appearance. Accoridngly, the government satisfied the Corley standard and did not violate any underlying rationale of the "prompt presentment" rule.

The defendant's motion as to issues of "prompt presentment" should be denied.

## IV.    CONCLUSION

For the reasons stated here, the government respectfully requests that the Court deny the defendant's motion (ECF No. 22) in its entirety.

                        Respectfully submitted,

                        MOORE CAPITO
                        United States Attorney

              By:
                        s/Jonathan T. Storage
                        JONATHAN T. STORAGE
                        Assistant United States Attorney
                        WV State Bar No. 12279
                        300 Virginia Street, East
                        Room 4000
                        Charleston, WV 25301
                        Telephone: 304-345-2200
                        Fax: 304-347-5104
                        E-mail: Jonathan.Storage@usdoj.gov

## CERTIFICATE OF SERVICE

It is hereby certified that the foregoing "GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT PABLO DOMINGUEZ'S MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS STATEMENT AND DISMISS INDICTMENT" has been electronically filed and service has been made on opposing counsel by virtue of electronic mail this the 3rd day of March, 2026, to:

Michelle R. Fox, Esq.
LAW OFFICES OF MICHELLE ROMAN FOX
3359 Teays Valley Road
Hurricane, WV 25526
Email: michellefox@smithlawpllc.net

s/Jonathan T. Storage
JONATHAN T. STORAGE
Assistant United States Attorney

26