# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF: | Case No. 2:26-mj-00003 |
| THE COMMERCIAL PROPERTY LOCATED AT 503 1ST AVENUE SOUTH, NITRO, KANAWHA COUNTY, WEST VIRGINIA 25143 | FILED UNDER SEAL |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH AND SEIZURE WARRANT

I, Terrance L. Taylor, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

1. I am a Special Agent ("SA") with Homeland Security Investigations ("HSI"), United States Department of Homeland Security ("DHS"), Resident Agent in Charge office located in Charleston, West Virginia. As such, I am a law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 1546, among other offenses.

2. I have been a Special Agent with HSI since March 2012. I retired from HSI in December 2024 and was rehired by HSI in September 2025. I am a Special Agent with twenty-three years of federal law enforcement experience. Prior to my employment with

AGUIRRE-00161

HSI, I was a Police Officer for two years in Huntington, West Virginia, a Special Agent with the United States Department of State Bureau of Diplomatic Security for six years, a Special Agent with the Naval Criminal Investigative Service for two years, and a Special Agent with the United States Department of State Office of Inspector General for two years. I am a graduate of three federal law enforcement academies at the Federal Law Enforcement Training Center and a graduate of the West Virginia State Police Academy. I graduated from the Criminal Investigator Training Program in 2002, and the Immigration and Customs Enforcement ("ICE") Special Agent Training Program in 2012. As part of these programs, I received extensive training in the areas of law within the jurisdiction of HSI. These areas include laws and regulations pertaining to the importation of various types of merchandise and contraband, prohibited items, money laundering, and various immigration violations. I have more specifically received specialized instruction on how to conduct criminal investigations related to violations of immigration fraud, document fraud, along with human trafficking and labor trafficking.

3.    As a part of my daily duties with HSI, I investigate criminal violations of the Immigration and Nationality Act ("INA") and other federal laws, to include, but not limited to, the unlawful re-entry of previously removed aliens, 8 U.S.C. § 1326(a) and (b); illegal entry into the United States by aliens, 8 U.S.C.

2

AGUIRRE-00162

§ 1325; the unlawful employment of illegal aliens, 8 U.S.C. § 1324a; the bringing in and harboring of illegal aliens, 8 U.S.C. § 1324; fraud and misuse of visas, permits, and other documents, 18 U.S.C. § 1546; fraud and related activity in connection with identity documents, 18 U.S.C. § 1028; and misuse of Social Security Numbers ("SSN"), 42 U.S.C. § 408. I have received training in immigration violations, and I have participated in numerous investigations and enforcement operations related to violations of the INA and other related federal immigration laws. I am an "immigration officer," as defined 8 U.S.C. § 1101(a)(18).

### PURPOSE OF THE AFFIDAVIT

4.     This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant for the location specifically described in Attachment A to this Affidavit, including the properties and/or persons listed below, for contraband and evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1326(a) and (b), 8 U.S.C. § 1325, 8 U.S.C. § 1324a, 8 U.S.C. § 1324, 18 U.S.C. § 1028, 18 U.S.C. § 1546, and 42 U.S.C. § 408, which are more specifically described in Attachment B of this Affidavit:

      a.     The entire property located at 503 1st Avenue South, Nitro, Kanawha County, West Virginia (the **"BUSINESS LOCATION"**);

3

AGUIRRE-00163

b.  The contents of any locked cabinets, containers, drawers, boxes, or other receptacles large enough for paper record retention at the **BUSINESS LOCATION;** and

c.  The person of any illegal aliens found at the **BUSINESS LOCATION.**

5.  The statements contained in this Affidavit are based upon my personal knowledge, as well as information provided to me by other law enforcement officers and others familiar with the business. All observations not personally made by me were related to me by the individuals who made them or were conveyed to me by my review of records, documents, and other physical evidence obtained during this investigation.

6.  This Affidavit is being submitted for the limited purpose of securing a search warrant, and, accordingly, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts necessary to establish probable cause that violations of 8 U.S.C. § 1324 (bringing in and harboring of illegal aliens), 8 U.S.C. § 1324a (unlawful employment of illegal aliens), 8 U.S.C. § 1325 (illegal entry into the United States by aliens), 18 U.S.C. § 1546 (fraud and misuse of visas, permits, and other documents); 42 U.S.C. § 408 (misuse of Social Security Numbers); and 18 U.S.C. § 1028 (fraud and related activity in connection with identification

4

AGUIRRE-00164

documents) have occurred in Kanawha County, West Virginia, within the Southern District of West Virginia, and that evidence, contraband, and fruits of those violations are presently at the **BUSINESS LOCATION** and/or on the person of identified illegal aliens.

7.    This Court has jurisdiction to issue the requested warrant under Rule 41(b)(1) of the Federal Rules of Criminal Procedure.

## BACKGROUND ON IMMIGRATION RELATED INVESTIGATIONS

8.    I know from previous worksite, identity theft, and document fraud investigations that there are some common indicators of immigration identity theft. In most cases, illegal aliens prefer to use the identity of a United States citizen and will do so by purchasing a valid United States birth certificate and Social Security Number/card. The illegal aliens in turn adopt these identities and gain employment. The illegal aliens will use the identity for employment purposes only; in the community, they live as their true identity.

9.    I know from my past investigations and experience that illegal aliens will attempt to physically conceal themselves behind machinery, in equipment and storage rooms, in vehicles and trailers, on the roof of the facility, and other locations on and near company property, when they become aware of the presence of HSI Agents inspecting the workforce. I also know and have witnessed

5

AGUIRRE-00165

that illegal alien employees will often attempt to conceal or discard fraudulent identity documents or employee identification cards, and illegal alien employees will often attempt to flee on foot or by vehicle.

10.  Based upon my experience, if illegal aliens learn that HSI Agents plan to visit their place of employment, they are very likely to stay away from work during the time of the planned visit.

11.  Based upon the information developed during the investigation, I believe it to be probable that illegal aliens are currently employed at the **BUSINESS LOCATION** located in Nitro, Kanawha County, West Virginia, and that most of them are employed using fraudulently obtained Lawful Permanent Resident cards and/or Social Security Numbers. I believe that these aliens may be found on any regularly scheduled work shift and within any outbuildings.

12.  I know from my past investigations and experience that illegal aliens who rely on fraudulent identity documents to obtain employment in the United States keep the fraudulent documents on their person or at their residence.

### BACKGROUND ON THE INVESTIGATION AND PROBABLE CAUSE

### Purpose of Immigration-Related Documentation

13.  I understand that Alien Registration Numbers (or "A-numbers") are unique identifiers assigned by the United States government to non-citizens who interact with immigration agencies, such as U.S. Citizenship and Immigration Services ("USCIS"), ICE,

AGUIRRE-00166

or Customs and Border Protection. These numbers are specific to individuals and serve as a means to track their immigration records and histories. Each Alien Registration Number is unique and assigned to only one individual. Once assigned, the Alien Registration Number remains with the individual throughout their interactions with United States immigration agencies. The Alien Registration Number will never change, even if their immigration status changes.

14. I understand that a Lawful Permanent Resident, commonly referred to as a "green card holder," can be identified through specific documentation and characteristics that demonstrate their immigration status in the United States. All Lawful Permanent Residents receive a Permanent Resident card on Form I-551, commonly called a "green card" that includes the individual's name and Alien Registration Number. Lawful Permanent Residents have specific rights and responsibilities that distinguish them from non-immigrants, such as the right to live and work permanently in the United States.

15. I understand that a Social Security Number is a nine-digit code issued to individuals by the Social Security Administration. Employers use Social Security Numbers to report wages and taxes to the Internal Revenue Service and other government agencies. Social Security Numbers are also used to payroll processing, tax filings, and other employment-related purposes.

7

After an employment authorization document is issued by USCIS, the non-immigrant is eligible to apply for a Social Security Number because it is required for employment and tax purposes. Each Social Security Number is intended to be unique and assigned to only one individual. A person's Social Security Number will almost always remain with that individual permanently and will never change. If a Social Security Number is searched in a United States immigration agency database, it will provide a result if it belongs to an individual with an active employment authorization document.

## Employers' Responsibilities to Verify Work Authorizations

16. As a normal procedure of hiring employees in the United States, an employer must ascertain whether a potential employee is a United States citizen or lawfully entitled to work in the United States.

17. As part of the hiring process, the employer is required to have the applicant for employment provide documents to verify the identity and employment authorization of individuals hired for employment in the United States. These documents can include a United States passport, a birth certificate, a Social Security card, a Permanent Resident card, or various other documents.

18. To memorialize the employer's efforts an employer and employee complete an immigration form known as a Form I-

AGUIRRE-00168

9, Employee Eligibility Verification form. The employee initially fills out the first section of the Form I-9 and indicates in the appropriate blocks whether they are eligible to work as a citizen or national of the United States, a Lawful Permanent Resident, or a foreign national with authorization for employment in the United States. If the employee is a Lawful Permanent Resident, the employee must provide an immigration Alien Registration Number that was previously issued by the Department. If the employee is a foreign national authorized for employment in the United States, the employee must provide an Alien Registration Number, a Form I-94 admission number, or a foreign passport number. The employee then signs that portion of the Form I-9.

19. The employer then completes the second portion of the Form I-9 based upon the documents provided by the applicant for employment. In so doing, the employer indicates the type of documents presented and the employer believes the applicant is eligible for employment in the United States. The employer is required to sign this portion of the Form I-9.

20. In the third section of the Form 1-9, employers must periodically re-certify that the employee continues to be eligible for employment. The employer must maintain the original Form I-9 and must produce it upon request of DHS.

9

AGUIRRE-00169

Employers are required to retain Form 1-9s for three years after the date of hire or for one year after employment is terminated, whichever is later. See 8 C.F.R. § 274a.2(6)(2)(i).

21. Once an employer receives a Notice of Inspection for relevant Form I-9s the employer must produce the Form I-9s for inspection no later than three business days from the Notice. See 8 C.F.R. § 274a.2(6)(2)(i).

22. It is common practice for employers to attach to Form I-9 photocopies of any documents produced by the employee in support of statements made on the Form 1-9. See 8 C.F.R. § 274a.2(b)(3).

### Service of Notice of Inspection at the BUSINESS LOCATION

23. On or about December 18, 2025, your Affiant issued Rio Grande, a Notice of Inspection at the **BUSINESS LOCATION**. Specifically, your Affiant spoke with Miguel Aguirre Jr. regarding the Notice of Inspection and the requirement to provide original Form I-9s and copies of their supporting identification documents of their current employees.

24. On or about December 23, 2025, your Affiant obtained the original Form I-9s and copies of the supporting identification documents to obtain employment at the **BUSINESS LOCATION** from the owner of the business, Miguel AGUIRRE. Your Affiant subsequently reviewed nineteen (19) Form I-9s and supporting identification

10

AGUIRRE-00170

documents associated to Rio Grande's current employees. Your Affiant conducted record checks on the nineteen (19) employee's Social Security Numbers, Driver's Licenses, United States Passports, and Lawful Permanent Resident identification cards in law enforcement and immigration databases. A review of these databases indicated that six (6) employees used fraudulently obtained and/or counterfeit identification documents to complete their Form I-9s to obtain employment.

25.    HSI received from the **BUSINESS LOCATION** a Form I-9 in the name of Valentina Gomez-Gomez with a listed date of birth as █████████ 2004. Gomez-Gomez's Form I-9 listed her as a Lawful Permanent Resident with Alien Registration Number ██████ 293. The individual claiming to be Gomez-Gomez signed the Form I-9 on March 17, 2025. Your Affiant searched DHS immigration databases and found no record that corresponds to that listed Alien Registration Number. Your Affiant searched databases using Gomez-Gomez's listed SSN xxx-xx-1297 on the Form I-9 and learned that it corresponds to a person with the last name of A█████-Ga███ in Winter Haven, Florida. The individual claiming to be Gomez-Gomez signed a Form W-4 (Employee's Withholding Certificate) on March 17, 2025, and listed her SSN as xxx-xx-1297.

26.    HSI received from the **BUSINESS LOCATION** a Form I-9 in the name of Ariosto Pablos with a listed date of birth as █████ ███ 1985. Pablos' Form I-9 listed him as a Lawful Permanent

11

AGUIRRE-00171

Resident with Alien Registration Number ▮▮▮▮ 559. The individual claiming to be Pablos signed the Form I-9 but did not list a signature date. Your Affiant searched DHS immigration databases and found no record that corresponds to that listed Alien Registration Number. Your Affiant searched databases using Pablos' listed SSN xxx-xx-5676 on the Form I-9 and learned that it corresponds to a person with the last name of C▮ in Atlanta, Georgia. The individual claiming to be Pablos signed a Form W-4 on June 28, 2025, and listed his SSN as xxx-xx-5676.

27. HSI received from the **BUSINESS LOCATION** a Form I-9 in the name of Rosita Mejia with a listed date of birth as ▮▮▮▮ ▮▮ 1998. Mejia's Form I-9 listed her as a Lawful Permanent Resident with Alien Registration Number ▮▮▮▮ 765. The individual claiming to be Mejia signed the Form I-9 but did not list a signature date. Your Affiant searched DHS immigration databases and found the number to be assigned to a person with the last name of R▮▮-H▮▮▮▮; furthermore, ▮▮-H▮▮▮ was previously deported from the United States. Your Affiant searched databases using Mejia's listed SSN xxx-xx-6453 on the Form I-9 and learned that it corresponds to a person with the last name of H▮ in Middlefield, Ohio. The individual claiming to be Mejia signed a Form W-4 on June 28, 2025, and listed her SSN as xxx-xx-6453.

28. HSI received from the **BUSINESS LOCATION** a Form I-9 in the name of Jimena Gomez-Hernandez with a listed date of birth as

12

██████████, 1984. Gomez-Hernandez's Form I-9 listed her as a Lawful Permanent Resident with Alien Registration Number ██████ 417. The individual claiming to be Gomez-Hernandez signed the Form I-9 but did not list a signature date. Your Affiant searched DHS immigration databases and found no record that corresponds to that listed Alien Registration Number. Your Affiant searched databases using Gomez-Hernandez's listed SSN xxx-xx-6942 on the Form I-9 and learned that it corresponds to a person with the last name of L██████ in Carthage, Illinois. The individual claiming to be Gomez-Hernandez signed a Form W-4 on September 20, 2025, and listed her SSN as xxx-xx-6942.

29. HSI received from the **BUSINESS LOCATION** a Form I-9 in the name of Rufino Hernandez-Hernandez with a listed date of birth as ██████████, 2000. Hernandez-Hernandez's Form I-9 listed him as a Lawful Permanent Resident with Alien Registration Number ██████ 323. The individual claiming to be Hernandez-Hernandez signed the Form I-9 on September 17, 2025. Your Affiant searched DHS immigration databases and found the number to be assigned to a person with the last name of P██████. Your Affiant searched databases using Hernandez-Hernandez's listed SSN xxx-xx-3079 on the Form I-9 and learned that it does not correspond to a known Social Security Number. The individual claiming to be Hernandez-Hernandez signed a Form W-4 on September 16, 2025, and listed his SSN as xxx-xx-3079.

13

AGUIRRE-00173

30. HSI received from the **BUSINESS LOCATION** a Form I-9 in the name of Jose Cruz with a listed date of birth as ███████, 2004. Cruz's Form I-9 listed him as a Lawful Permanent Resident with Alien Registration Number ███████ 302. The individual claiming to be Cruz signed the Form I-9 on November 26, 2024. Your Affiant searched DHS immigration databases and found no record that corresponds to that listed Alien Registration Number. Your Affiant searched databases using Cruz's listed SSN xxx-xx-8645 on the Form I-9 and learned that it corresponds to a person with the last name of Wi████ in Houston, Texas. The individual claiming to be Cruz signed a Form W-4 on November 26, 2024, and listed his SSN as xxx-xx-8645.

31. Your Affiant observed that five (5) of the aforementioned individuals listed a residential address of ████ Hillside Drive, Nitro, Kanawha County, West Virginia, on their Form I-9s and their Form W-4s. Further investigation revealed that this address is owned by Miguel AGUIRRE, the owner of the **BUSINESS LOCATION**. The residential address is located to the northwest, and directly behind, the **BUSINESS LOCATION**.

32. Based on the foregoing facts, my experience and training, I believe there is probable cause that contraband, evidence, fruits, and instrumentalities of violations of 8 U.S.C. § 1326(a) and (b), 8 U.S.C. § 1325, 8 U.S.C. § 1324a, 8 U.S.C. § 1324, 18 U.S.C. § 1028, 18 U.S.C. § 1546, and 42 U.S.C. § 408,

14

AGUIRRE-00174

will be found within the **BUSINESS LOCATION** and/or on the person of

identified illegal aliens located at the **BUSINESS LOCATION**.

TERRANCE L
TAYLOR
Digitally signed by TERRANCE L
TAYLOR
Date: 2026.01.12 19:14:56 -05'00'

_____
Terrance Taylor
Special Agent, HSI


Attested to by the applicant in accordance with the requirements
of Fed. R. Crim. P. 4.1 by telephone.


Date: _Jan. 13, 2026_    _____
                          DWANE L. TINSLEY
                          United States Magistrate Judge

15

AGUIRRE-00175